# 25-2105

## United States Court of Appeals for the Second Circuit

THE PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the State of New York,

*Plaintiff-Appellee,*

v.

CITIBANK, N.A.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

## REPLY BRIEF FOR APPELLEE

BARBARA D. UNDERWOOD
 *Solicitor General*
ESTER MURDUKHAYEVA
 *Deputy Solicitor General*
ANAGHA SUNDARARAJAN
 *Assistant Solicitor General*
  *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Appellee
28 Liberty Street
New York, New York 10005
(212) 416-8073

Dated: March 12, 2026

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................ii

PRELIMINARY STATEMENT................................................................... 1

ARGUMENT ......................................................................................3

POINT I

THIS COURT SHOULD EXERCISE ITS DISCRETION TO
REVIEW THE DISMISSAL OF THE SHIELD ACT CLAIM ...........................3

POINT II

THE SHIELD ACT CLAIM IS NOT PREEMPTED
BY THE FAIR CREDIT REPORTING ACT ....................................................7

CONCLUSION ................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*California Pub. Emps.' Ret. Sys. v. WorldCom, Inc.,*
    368 F.3d 86 (2d Cir. 2004) ...................................................................3

*Galper v. JP Morgan Chase Bank, N.A.,*
    802 F.3d 437 (2d Cir. 2015) ...............................................................8

*Isra Fruit Ltd. v. Agrexo Agric. Export Co. Ltd.,*
    804 F.2d 24 (2d Cir. 1986) ...................................................................3

*Koehler v. Bank of Bermuda Ltd.,*
    101 F.3d 863 (2d Cir. 1996) ...............................................................4

*Macpherson v. JP Morgan Chase Bank, N.A.,*
    665 F.3d 45 (2d Cir. 2011) ...................................................................8

*Sportsinsurance.com, Inc. v. Hanover Ins. Co.,*
    No. 21-cv-1967, 2022 WL 16706941 (2d Cir. Nov. 4, 2022) ..............4-6

*Texport Oil Co. v. M/V AMOLYNTOS,*
    11 F.3d 361 (2d Cir. 1993) ...................................................................6

*Tranello v. Frey,*
    962 F.2d 244 (2d Cir. 1992) ...............................................................6

**Federal Statutes**

15 U.S.C.
    § 1681m ...............................................................................................8-9
    § 1681t ...................................................................................................8
    § 6801 ...............................................................................................10-11
    § 6807 ...................................................................................................11

**State Statute**

General Business Law § 899-bb............................................................11

ii

**Federal Regulations**                                              **Page(s)**

12 C.F.R.
  pt. 364, app. B ........................................................................ 13
  § 41.90 .................................................................................... 12

16 C.F.R.
  § 314.3 .................................................................................... 13
  § 681.1 .................................................................................... 12

17 C.F.R. pt. 162, app. B .............................................................. 12-13

**Miscellaneous Authorities**

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice
  and Procedure* § 3929 (3d ed. Sept. 2025 update) (Westlaw) ............ 5-6

H.R. Rep. No. 108-263 (2003) ........................................................ 10

S. Rep. No. 108-166 (2003) ............................................................ 10

## PRELIMINARY STATEMENT

Plaintiff-appellee People of the State of New York, by Letitia James, Attorney General (OAG) brought this civil enforcement action to remedy defendant-appellant Citibank N.A.'s persistent failure to (i) address unauthorized electronic funds transfers in accordance with federal law, and (ii) implement reasonable measures to protect the confidentiality and integrity of consumer data. This Court has granted Citibank's request for interlocutory review of the district court's refusal to dismiss most of OAG's claims, and OAG has asked this Court to exercise its broad discretion under 28 U.S.C. § 1292(b) to review the district court's dismissal of OAG's claim under New York's Stop Hacks and Improve Electronic Data Security (SHIELD) Act and reverse that dismissal. This Court referred that request to the merits panel and ordered briefing on OAG's cross-appeal. This is OAG's reply brief in support of its cross-appeal of the SHIELD Act claim.

First, Citibank is wrong to argue that OAG was required to file a cross-petition for interlocutory review to preserve its ability to seek review of the SHIELD Act claim's dismissal in this appeal. OAG did not file a cross-petition for interlocutory review of that dismissal (and instead

opposed Citibank's petition) because OAG believed that no interlocutory appeal was warranted in this matter. However, now that this Court has accepted an interlocutory appeal under § 1292(b), it has broad discretion to consider *any* question encompassed in the certified order. Here, the Court can and should exercise its discretion to review the dismissal of the SHIELD Act claim because doing so will allow the Court to resolve in a single decision all the legal questions presented by the district court's order while providing clear guidance on the scope of litigation on OAG's claims going forward, all without any prejudice to Citibank.

Second, this Court should reverse the district court's conclusion that OAG's SHIELD Act claim is preempted by the Fair Credit Reporting Act (FCRA). Federal law distinguishes between a financial institution's data security obligations and identity theft requirements, and the FCRA regulates only the latter. While the FCRA requires companies to implement reasonable procedures to detect and prevent the unauthorized *use* of consumer information, it does not require companies to implement data security measures to prevent unauthorized *access* to that information. Rather, a financial institution's data security obligations are governed

by the Gramm-Leach-Bliley Act (GLBA), which expressly authorizes complementary state regulations such as the SHIELD Act.

## ARGUMENT

### POINT I

**THIS COURT SHOULD EXERCISE ITS DISCRETION TO REVIEW THE DISMISSAL OF THE SHIELD ACT CLAIM**

As Citibank previously acknowledged, this Court has jurisdiction to review the district court's dismissal of the SHIELD Act claim even in the absence of an independent cross-petition. *See* Reply in Supp. of Pet. for Permission to Appeal at 10, No. 25-1179 (2d Cir. May 16, 2025), ECF No. 20.1. Under 28 U.S.C. § 1292(b), this Court has jurisdiction over certified orders, rather than certified questions. *See Isra Fruit Ltd. v. Agrexo Agric. Export Co. Ltd.*, 804 F.2d 24, 25 (2d Cir. 1986). Once an order has been certified, this Court has broad discretion to reach any legal question that is "fairly included within the certified order." *California Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95 (2d Cir. 2004) (quotation marks omitted).

Here, there is no dispute that the district court's dismissal of the SHIELD Act claim is included in the certified order. This Court should

3

exercise its discretion to review the dismissal of OAG's SHIELD Act claim for several reasons.

*First*, review of the SHIELD Act issues will "promote judicial and litigant efficiency without prejudicing either party." *See Sportsinsurance.com, Inc. v. Hanover Ins. Co.*, No. 21-cv-1967, 2022 WL 16706941, at \*2 (2d Cir. Nov. 4, 2022) (summary order). The district court squarely decided that the SHIELD Act claim is preempted in the certified order, and its decision was based on the same limited record that is already before this Court on appeal. Citibank is in no way prejudiced by this review because it has been given "adequate notice of all issues to be argued and decided" in this appeal, *id.* (quotation marks omitted), and the parties have fully briefed the SHIELD Act issues alongside the Electronic Funds Transfer Act issues that are undisputedly part of this appeal. Resolving both issues as part of a single appeal promotes judicial efficiency because it mitigates against the risk of piecemeal or bifurcated litigation on OAG's claims following remand and provides clear guidance on the scope of litigation moving forward. *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996).

4

*Second*, Citibank is wrong to argue (*see* Response & Reply Br. for Appellant-Cross-Appellee (Response Br.) at 47-48) that this Court has "fastidiously enforced" the requirement that a party seeking review of an issue resolved against it must file a separate notice of cross-appeal in the context of a certified interlocutory appeal under 28 U.S.C. § 1292(b). The cross-appeal requirement is a rule of practice that is designed to protect the parties' interest in finality and that may be relaxed in the context of an interlocutory appeal because there is no "justifiable expectation[] of repose or finality" in such cases. *See* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3929 (3d ed. Sept. 2025 update) (Westlaw); *see Sportsinsurance.com*, 2022 WL 16706941, at \*2; *see also id.* at \*2 n.3. Under this Court's rule, the relevant considerations for determining the scope of review in an interlocutory appeal are whether the parties had adequate notice of the issues to be argued and whether the record affords a sound basis for this Court's review.[1] *See id.* at \*2. As explained above (at 4), both conditions are met here.

---

[1] As this Court has acknowledged, *see Sportsinsurance.com*, 2022 WL 16706941, at \*3 n.4, some courts of appeals have required a timely petition for permission to cross-appeal under 28 U.S.C. § 1292(b). This

(*continued on the next page*)

*Third*, and in any event, this Court can construe OAG's opposition to Citibank's petition for leave to appeal as a conditional petition to cross-appeal the SHIELD Act claim. *See* 16 Wright & Miller § 3929 (court of appeals has discretion to specify which questions it will consider). OAG did not move for certification in the district court or file a petition for interlocutory appeal in this Court and instead opposed Citibank's request for interlocutory review. However, the opposition papers made clear that *if* interlocutory review was granted, OAG would seek review of the SHIELD Act question. (See Mem. of Law in Opp'n to Citibank Mot. at 20-22 (Mar. 4, 2025), Dist. Ct. ECF No. 64.) See Mem. of Law in Opp'n to Pet. for Permission to Appeal (Pet. Opp'n) at 22-23, No. 25-1179 (2d Cir. May 12, 2025), ECF No. 14. The district court denied OAG's request for conditional certification as unnecessary because the SHIELD Act issue

---

Court, by contrast, does not apply such a rule. *See id.* Therefore, Citibank's reliance on case law from these other circuits is misplaced. *See* Response Br. at 47-48 & n.6. Citibank's reliance (*see* Response Br. at 47) on this Court's decision in *Tranello v. Frey*, 962 F.2d 244, 248 (2d Cir. 1992), is similarly misplaced because this Court has since clarified that the requirement of a notice of or petition for leave to cross-appeal is not jurisdictional and does not preclude this Court's review of cross-appeals issues in cases like this. *See Texport Oil Co. v. M/V AMOLYNTOS*, 11 F.3d 361, 366 (2d Cir. 1993).

was fairly included in the certified order (Special Appendix 71-72) and this Court referred OAG's request to the merits panel. *See* Order (Sept. 3, 2025), 2d Cir. ECF No. 3. OAG's clear requests for conditional review in its opposition papers are entirely sufficient to preserve its right to seek this Court's review.

## POINT II

### THE SHIELD ACT CLAIM IS NOT PREEMPTED BY THE FAIR CREDIT REPORTING ACT

On the merits, this Court should reverse the district court's dismissal of OAG's SHIELD Act claim because that claim is not preempted by the FCRA.[2]

As a preliminary matter, Citibank errs in advancing an overly broad view of the applicable preemption principles. *See* Response Br. at 49-55. As explained in OAG's primary brief (see Br. for Appellee (OAG Br.) at 63-67), the FCRA generally preempts state laws only where those

---

[2] Because the district court's dismissal of the SHIELD Act claim was based solely on FCRA preemption, OAG agrees with Citibank (*see* Response Br. at 64 & n.8) that this Court should review only that determination regarding the SHIELD Act claim and should remand to allow the district court to decide in the first instance whether that claim is otherwise legally sufficient under Fed. R. Civ. P. 12(b)(6).

7

laws are inconsistent with the statute, and only to the extent of the inconsistency. *See* 15 U.S.C. § 1681t(a). This general rule is subject to certain enumerated exceptions that are construed "narrowly" to preempt only those claims that fall within the scope the provision at issue.[3] *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 445-46 (2d Cir. 2015) (interpreting 15 U.S.C. § 1681t(b)). As relevant here, the FCRA preempts any state law "requirement or prohibition" concerning the "conduct" required by 15 U.S.C. § 1681m(e), which, in turn, requires federal banking agencies to promulgate "red flag" regulations requiring users of consumer credit reports to "establish reasonable policies and procedures" to implement federal guidelines "regarding identity theft." *See* 15 U.S.C. §§ 1681m(e), 1681t(b)(5)(F).

Accordingly, the scope of FCRA preemption is circumscribed by the specific conduct regulated by the FCRA. As explained in OAG's primary

---

[3] Citibank's assertion (Response Br. at 53-54) that the FCRA's preemptive provisions should be read expansively is inconsistent with this Court's case law. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 445-46 (2d Cir. 2015); *Macpherson v. JP Morgan Chase Bank, N.A.*, 665 F.3d 45, 47-48 (2d Cir. 2011). Although Citibank attempts to distinguish those cases on their facts (*see* Response Br. at 61-63), it does not and cannot explain why those facts should govern this Court's interpretation of the plain text of the FCRA's preemption provision.

brief (at 63-69), the SHIELD Act does not address the same conduct regulated by the FCRA because it does not address a company's obligation to detect and respond to identity theft and instead regulates only a company's obligation to protect consumer data.

*First*, federal law distinguishes between identity theft prevention and data security, and it regulates data security under a different statutory framework, the Gramm-Leach-Bliley Act (GLBA), with which the SHIELD Act is consistent.

As relevant here, the FCRA and its implementing "red flag" regulations impose affirmative obligations on regulated entities, including financial institutions, to take certain affirmative steps to detect and prevent the unauthorized use of consumer information. *See* 15 U.S.C. § 1681m(e). Section 1681m(e) was originally enacted as part of the 2003 amendments to the FCRA and was designed to "enlist[] financial institutions' support in fighting identity theft by requiring them to develop procedures" to identity signs of identity theft and mitigate the harm to

9

the financial lives of victims of identity theft.[4] H.R. Rep. No. 108-263, at 22 (2003); *see* S. Rep. No. 108-166, at 8-9 (2003). The 2003 amendments to the FCRA did not address, and were not concerned with, a financial institution's obligation to implement reasonable measures to protect the security and integrity of consumer data and prevent an unauthorized third party from accessing that data in the first instance.

That is because the GLBA independently imposes an "affirmative and continuing obligation" on financial institutions to "protect the security and confidentiality of [their] customers' nonpublic personal information." 15 U.S.C. § 6801(a). Specifically, the GLBA required various federal agencies, including the federal banking agencies, to establish "appropriate standards . . . relating to administrative, technical, and physical safeguards" to protect the security of consumer information and prevent unauthorized access to that information. *Id.* § 6801(b). The GLBA

---

[4] The 2003 amendments also extended the "uniform national standard for consumer protections governing credit transactions" that were originally added to the FCRA in 1996 and were set to expire in 2004. *See* S. Rep. No. 108-166, at 26 (2003); *see also* H.R. Rep. No. 108-263, at 24, 35 (2003). These standards included the preemption provisions codified at 15 U.S.C. § 1681t(b). *See* H.R. Rep. No. 108-263, at 36; *see also* Response Br. at 53-54.

expressly authorizes states to implement their own data security standards, as long as state law is not inconsistent with the GLBA. *See id.* § 6807.

Citibank does not dispute that New York's SHIELD Act is consistent with the GLBA. *See* Response Br. at 63. Like the GLBA, the SHIELD Act requires companies that hold consumer information to "develop, implement[,] and maintain" reasonable administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of that data. *See* General Business Law § 899-bb(2); *compare id.*, *with* 15 U.S.C. § 6801 (imposing similar data security requirements on financial institutions). The SHIELD Act also accounts for a company's federal obligations under the GLBA by specifying that a financial institution is in compliance with the SHIELD Act if it has complied with the GLBA and its implementing regulations. *See* General Business Law § 899-bb(1)(a)(i), (2)(b)(i).

*Second*, like the FCRA itself, the red flag regulations promulgated pursuant to 15 U.S.C. § 1681m(e) addresses only identity theft detection, so Citibank is wrong to argue (Response Br. at 59-61) that these regulations can preempt OAG's SHIELD Act claim. The FCRA's implementing

regulations require financial institutions to develop and implement a program to identify "red flags" that indicate the possible existence of identity theft based on how a consumer's information is being used, and to respond to that kind of activity once it has been detected.[5] *See* 16 C.F.R. § 681.1 (FTC); 12 C.F.R. § 41.90 (OCC). The accompanying interagency guidelines lay out various risk factors that a company may consider when developing an identity theft program, all of which focus on how a consumer's information is used. *See* 17 C.F.R. pt. 162, app. B, pt. II. The same guidelines also outline various steps a company may take to mitigate the harm to the consumer from identity theft and to prevent the future misuse of a consumer's financial information. *See id.* at app. B, pt. IV.

---

[5] Citibank's assertion (*see* Response Br. at 56-57) that these regulations address a financial institution's obligation to safeguard consumer data and to implement reasonable data security measures is incorrect. As explained above (at 9-11), both Congress and the relevant regulatory agencies have consistently distinguished between data security and identity theft, and the FCRA and its implementation regulations address only the latter. Indeed, while the kinds of procedures prescribed by the red flag rules may, as a practical matter, also help protect consumer data security, these procedures are not designed for that purpose and are not the kinds of data security measures that the GLBA and SHIELD Act require. *Contra* Response Br. at 5, 56-57.

While the regulatory guidance recognizes that a company's existing data security program implemented pursuant to other statutory or regulatory mandates, including the GLBA, may have the practical effect of identifying and mitigating identity theft, *see id.* at app. B, neither the FCRA not the red flag regulations themselves require financial institutions to implement data security measures. See OAG Br. at 67-68. By contrast, the GLBA's implementing regulations, like the statute itself and the SHIELD Act, focus on a financial institution's obligation to protect the security and integrity of consumer data, rather than against threats to the consumer's financial wellbeing from the misuse of that data. *See, e.g.*, 16 C.F.R. § 314.3 (FTC). The interagency guidance similarly describes the kinds of technical and physical safeguards that can bring a financial institution into compliance with federal information security standards and prevent consumer data from being accessed improperly. *See, e.g.*, 12 C.F.R. pt. 364, app. B. For example, these guidelines recommend that regulated entities restrict access to consumer information by encrypting sensitive information and implementing reasonable controls to authenticate the identity of the person seeking to access that information (for example, through multifactor authentication). *See id.*, app. B, pt. III(C).

These safeguards are distinct from the kinds of procedures recommended by the red flag rule to detect identity theft. In other words, the SHIELD Act cannot be preempted by the FCRA generally or § 1681m(e) in particular, because it governs a distinct area of conduct subject to a different federal regulatory scheme that welcomes complementary state regulation.

*Third*, Citibank misses the mark in arguing (Response Br. at 63-64) that OAG's SHIELD Act claim is preempted because it relies on the same factual allegations as OAG's (separately dismissed) claim under the red flag regulations. The fact that both claims rest on Citibank's failure to implement a series of straightforward technical safeguards does not mean that both claims are predicated on the same set of statutory obligations. As explained above (at 9-11), the SHIELD Act and the FCRA impose different obligations on financial institutions like Citibank, and reflect the distinction that Congress drew between data security and identity theft. A financial institution's internal practices (or lack thereof) may be deficient under both statutory frameworks because it fails both to protect consumer data and to prevent the unauthorized use of that data. But the financial institution's failure does not somehow mean that

14

a claim under the SHIELD Act is predicated on the conduct that is regulated by the FCRA.

At best, Citibank suggests that the dismissed red flag claim rests on the same allegations regarding Citibank's failure to implement a reasonable data security program that supports OAG's SHIELD Act claim. *See* Response Br. at 58-59. This assertion misunderstands the scope of the red flag rule. As explained above (at 11-13), the red flag rule does not require financial institutions to implement data security measures, and allegations that a financial institution failed to implement a reasonable data security program, on their own, do not support a claim under the red flag rule. However, Citibank offers no reason to conclude that the same allegations, which include Citibank's alleged failure to implement the kinds of data security measures recommended by the GLBA's implementing regulations (*see* Joint Appendix 30, 37-39, 72-74), are also insufficient to support a claim under the SHIELD Act.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's dismissal of the SHIELD Act claim and remand for further proceedings.

Dated:  New York, New York
        March 12, 2026

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellee

By:   */s/ Anagha Sundararajan*
     ANAGHA SUNDARARAJAN
     Assistant Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
ANAGHA SUNDARARAJAN
  *Assistant Solicitor General*
    *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-8073

16

## PRINTING SPECIFICATIONS STATEMENT

Pursuant to Uniform Practice Rules of the Appellate Division (22 N.Y.C.R.R.) § 1250.8(j), the foregoing brief was prepared on a computer (on a word processor).  A proportionally spaced, serif typeface was used, as follows:

> Typeface: Century Schoolbook
> Point size: 14
> Line spacing: Double

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, proof of service, certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc., is 3,063.