# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-956-7676
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

NEW YORK • LOS ANGELES • PALO ALTO
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

March 16, 2026

**BY ACMS**

Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

> Re: *The People of the State of New York, by Letitia James* v. *Citibank, N.A,*
> No. 25-2105

Dear Ms. Wolfe:

Pursuant to Rule 28(j), I write to call the Court's attention to *Jung* v. *Discover Bank,* 2026 WL 657719 (N.D. Cal. Mar. 9, 2026) (Appendix A). *Jung* involved an EFTA claim predicated on an electronically initiated, unauthorized consumer wire transfer. Judge Breyer rejected the reasoning of the decision on appeal here, instead joining the judicial consensus that consumer wire transfers are exempt from EFTA. Three aspects of Judge Breyer's decision are particularly notable.

First, the NYAG has tried to distinguish (at 50-51) the many judicial decisions declining to extend EFTA to consumer wire transfers because they did not address the NYAG's exact theory. *Jung* addressed—and rejected—just that theory. Judge Breyer described the decision on appeal here as "breaking down a wire transfer into a series of steps, and concluding that only the bank-to-bank step was exempt" from EFTA. 2026 WL 657719, at *2. The court explained that this piecemeal "analysis does not square" with EFTA's definitional application to fund transfers "to or from" *consumer* accounts. *Id.* It thus noted that "bank-to-bank transfers were already outside" EFTA because "they do not involve" the movement of funds between consumer accounts, meaning that the NYAG's "interpretation would render [Section 7(B)] superfluous." *Id.*; *see id.* at n.1 (reasoning that if "EFTA already covered wire transfers, there would have been no reason for Congress in 2010 to expand the EFTA to cover remittance wire transfers").

Catherine O'Hagan Wolfe            -2-

Second, the NYAG has attempted (at 45-49) to muddy the regulatory history.  But *Jung* correctly found that the regulatory history is clear:  EFTA's implementing regulation "provides that 'electronic funds transfer' does not include '[w]ire or other similar transfers.'"  2026 WL 657719, at \*2 (citation omitted); *see* Citibank Br. 48-55.

Third, Judge Breyer emphasized the degree to which the decision on appeal here stands alone.  As he observed, "the only two appellate courts to address the point" and "every district court in [the Ninth] Circuit" have come to the same view about EFTA's scope.  2026 WL 657719, at \*2.  The court thus dismissed the decision below as an isolated "out-of-circuit decision currently on appeal."  *Id*.

Respectfully,

*/s/ Jeffrey B. Wall*

Jeffrey B. Wall
Sullivan & Cromwell LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006
(202) 956-7500
wallj@sullcrom.com

*Counsel for Appellant*

(Attachment)

cc:      Counsel of Record (by ACMS)

**CERTIFICATE OF SERVICE**

I certify that on March 16, 2026, the foregoing letter was filed with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit through the ACMS system. I further certify that all participants in this case are registered ACMS users and that service will be accomplished by the ACMS system.

/s/ *Jeffrey B. Wall*
Jeffrey B. Wall

Dated: March 16, 2026

# APPENDIX A

Jung v. Discover Bank, --- F.Supp.3d ---- (2026)

2026 WL 657719

2026 WL 657719
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Jonathan JUNG, Plaintiff,

v.

DISCOVER BANK, Defendant.

Case No. 25-cv-06383-CRB
|
Signed March 9, 2026

**Attorneys and Law Firms**

Adrian Bacon, Meghan Elisabeth George, Law Offices of Todd M. Friedman, P.C., Woodland Hills, CA, Matthew R. Snyder, Todd Michael Friedman, Law Offices of Todd M. Friedman, P.C., Calabasas, CA, for Plaintiff.

Andrew J. Soukup, Pro Hac Vice, Valerie L. Hletko, Pro Hac Vice, Covington & Burling LLP, Washington, DC, Matthew Quinn Verdin, Covington & Burling LLP, San Francisco, CA, for Defendant.

**ORDER GRANTING MOTION TO DISMISS**

CHARLES R. BREYER, United States District Judge

**\*1** Plaintiff Jonathan Jung's wife disclosed information about the couple's savings account to a fraudster who then used the information to transfer $110,000 out of the account. FAC (dkt. 25) ¶¶ 11–17. When Defendant Discover Bank refused to reimburse Jung, Jung brought this putative class action, alleging violations of (1) the Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693 et seq.; (2) California's Commercial Code (UCC), Cal. Com. Code §§ 11201 et seq.; and (3) California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq. Discover moves to dismiss. See MTD (dkt. 27). Because the Court agrees that each of the claims fail to state a claim, the Court GRANTS the motion.

**I. BACKGROUND**

**A. History of Dispute**

Jung and his wife, Karen Chiu, had a joint online savings account with Discover. FAC ¶ 11. That account had been breached multiple times between October 2023 and December 2024. Id. ¶ 12. Discover only learned of those breaches when Jung initiated disputes; it failed to detect the fraud on its own. Id. ¶ 13. Discover refunded Jung and Chiu for those fraudulent transactions. Id.

On December 5, 2024, Chiu received a phone call from what appeared to be Discover's official phone number. Id. ¶ 15. The caller, actually a fraudster, identified herself as a member of Discover's fraud team, and referenced legitimate bank activity. Id. The fraudster then instructed Chiu to verify her identity using Socure, a third-party vendor that Discover actually uses. Id. ¶ 16. Chiu did so, uploading her identification to Socure after receiving authentication codes that appeared to be from Discover. Id. Immediately after that, Jung received an email that a wire transfer of $110,000 had been initiated from his account. Id. ¶ 17.

Jung immediately contacted Discover to dispute the wire transfer. Id. ¶ 18. Discover closed the account, opened a replacement account, and began a fraud investigation. Id. Ultimately, Discover concluded that the wire had been sent to a Bank of America account. Id. ¶ 19. However, Discover refused to reimburse Jung, as it claimed that the transaction had passed its internal security measures. Id.; see also id. ¶ 21 (Discover stated "that biometric and authentication protocols had been completed—even though those credentials had been obtained through fraud.").

**B. Procedural History**

Jung brought a class action lawsuit against Discover in July of 2025. See Compl. (dkt. 1). In response to Discover's first motion to dismiss, Jung amended the complaint. See First MTD {dkt. 22); FAC. The FAC alleges violations of (1) the EFTA; (2) the UCC; and (3) the UCL. See FAC. Discover again moves to dismiss, arguing that Jung fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See MTD.

**II. LEGAL STANDARD**

Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. The Court may base dismissal on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up). A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009) (cleaned up). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. Id. (citing Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

**\*2** If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. Proc. 15(a)(2). A court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Discover moves to dismiss all three claims. See MTD. This order addresses each claim in turn.

### A. EFTA Claim

Jung alleges that the $110,000 wire transfer was an "unauthorized electronic fund transfer" under the EFTA because it was "initiated by someone other than Plaintiff and without Plaintiff's actual authority or benefit." See FAC ¶ 47 (citing 15 U.S.C. § 1693a(12)). He further alleges that the EFTA limits consumers' liability for unauthorized fund transfers to $50.00, that he notified Discover promptly when he learned of the wire transfer, and that Discover was therefore required to reimburse him. Id. ¶ 50. He adds that Discover did not investigate the fraudulent wire transfers in good faith or have a reasonable basis for believing that the transfers were authorized, entitling him to treble damages. Id. ¶¶ 55–56.

Discover argues that Jung has failed to state a claim for a number of reasons. The Court agrees with Discover as to one: that the EFTA does not apply to consumer wire transfers. The statute explicitly excludes from the definition of "electronic fund transfers" "any transfer of funds ... made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and which is not designated primarily to transfer funds on behalf of a consumer." See 15 U.S.C. § 1693a(7)(B). The EFTA's implementing regulation provides that "electronic funds transfer" does not include "[w]ire or other similar transfers." 12 C.F.R. § 1005.3(c)(3). Indeed, that is how the only two appellate courts to address the point have viewed the Act. See Nazimuddin v. Wells Fargo Bank, N.A., No. 24-20343, 2025 WL 33471, at *3 (5th Cir. Jan. 6, 2025); Wright v. Citizen's Bank of E. Tenn., 640 F. App'x 401, 404 (6th Cir. 2016). It is also how every district court in this Circuit has viewed it. See, e.g., Bakhtiari v. Comerica Bank, Inc., No. 24-273-WHA, 2024 WL 3405340, at *1 (N.D. Cal. July 12, 2024); Moore v. JPMorgan Chase Bank, N.A., No. 22-cv-184-JSC, 2022 WL 16856105, at *2 (N.D. Cal. Nov. 10, 2022).[1]

The Court therefore does not follow New York v. Citibank, N.A., 763 F. Supp.3d 496, 504–05 (S.D.N.Y. 2025), an out-of-circuit decision currently on appeal, which held otherwise by breaking down a wire transfer into a series of steps, and concluding that only the bank-to-bank step was exempt from the EFTA. Citibank's analysis does not square with the EFTA's application to transfers of funds to or from an "account," and its definition of "account" as something "established primarily for personal, family, or household purposes." See 15 U.S.C. §§ 1693a(7), 1693a(2). That is, bank-to-bank transfers were already outside of the EFTA as they do not involve "accounts," and so Citibank's interpretation would render 15 U.S.C. §§ 1693a(7)(B) (excluding from the definition of "electronic fund transfers" "any transfer of funds ... made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and which is not designated primarily to transfer funds on behalf of a consumer") superfluous.

**\*3** While this Circuit might someday embrace Citibank's reasoning, it has not done so yet. The Court is not persuaded that it should do so in the meantime. Accordingly, the Court DISMISSES the EFTA claim without leave to amend.

**B. UCC Claim**

Jung alleges that the wire transfer at issue here was a payment order that Discover was required to refund to him under the UCC. See FAC ¶¶ 57–63 (citing Cal. Com. Code § 11204). Under the UCC, if a payment order was neither (1) authorized nor (2) "verified pursuant to a commercially reasonable security procedure that the bank followed in good faith, the bank must bear the loss." 800 Columbia Project Co., LLC v. CMB Wing Lung Bank, Ltd., No. 8:21-cv-278-JLS-ADS, 2022 WL 17884221, at *6 (C.D. Cal. Sept. 19, 2022). Discover argues that Jung fails as to both points. MTD at 11–13.

Jung alleges that the payment order was unauthorized. See FAC ¶ 60 (adding, "It was fraudulently induced and carried out by an imposter"). The UCC states that "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." Cal. Com. Code § 11202(a). Discover does not articulate why Jung and Chiu should be bound by the fraudster's order under the law of agency. It argues only that Chiu "complied" with the fraudster's instructions to furnish her means of access to the account, but does not tie that argument to the concept of agency. MTD at 12 (citing FAC ¶¶ 16–17). Discover's motion cites to a single out-of-circuit case on this point. See id. (citing Harborview Cap. Partners, LLC v. Cross River Bank, 600 F. Supp. 3d 485, 491–92 (D. N.J. 2022) (holding that a fraudulent order was nonetheless authorized)). But in Harborview, the fraud took place before the payment order: a fraudster impersonated a company's CEO and instructed the company's account manager to wire money to a foreign account. 600 F.Supp. 3d at 486. When she did so, the bank contacted the account manager to confirm the details of the transaction, and she confirmed them; thus "the transfers were not 'unauthorized'; they were specifically ordered by" the company's account manager. Id. at 487, 491. Here, Jung did not even know about the wire transfer and Chiu did not think that she was authorizing a wire transfer. See FAC ¶ 15 ("caller identified herself as a Discover Bank fraud team member"). Harborview does not apply here.[2] The allegation that the order was unauthorized is adequate at this stage.

Jung also alleges that Discover did not use a reasonable commercial security procedure, see FAC ¶ 61 ("Defendant did not maintain or apply a reasonable security procedure."), but that allegation is conclusory and inadequate. See Chen v. JPMorgan Chase Bank, N.A., 745 F. Supp. 3d 1025, 1032 (C.D. Cal. 2024) (dismissing with leave to amend where there were "no facts alleged, beyond conclusory allegations, concerning whether the security measures employed at BA or Chase were commercially unreasonable"). "Commercial reasonableness of a security procedure is a question of law to be determined by considering the wishes of the customer expressed to the bank, the circumstances of the customer known to the bank, including the size, type, and frequency of payment orders normally issued by the customer to the bank, alternative security procedures offered to the customer, and security procedures in general use by customers and receiving banks similarly situated." UCC § 11202(c). Jung does not allege any such information, and the few allegations about Discover's security procedures do not support an inference that the security procedures were inadequate. See FAC ¶¶ 16 (Socure is "a third-party vendor that Discover [ ] actually uses for ID verification"), 21 (referencing "biometric and authentication protocols"), 25 (wire transfer requires "authentication protocols (such as security questions, passcodes, or biometric checks)"), 31 ("login credentials and biometric confirmation"). In contrast, in Little Seeds, Judge Gilliam held that the plaintiffs had plausibly pleaded this element because

> **\*4** Plaintiffs allege that Defendant allowed twelve wire transfers to be completed in an hour, draining more than $300,000 from accounts that had never made a wire transfer before, and allege that "[h]ad Defendant employed adequate security procedures and tools to effectively monitor and respond to anomalous account activity," Defendant would have noticed this and frozen the accounts.... Plaintiffs also allege that Defendant had previously alerted Plaintiffs any time there was "anomalous or ahistorical account activity" in the last twenty years.

—— F.Supp.3d at ——, 2025 WL 3141496, at *7. Those allegations are more substantial than what Jung has done here. Accordingly, the Court DISMISSES the UCC claim, with leave to amend if Jung can add allegations about why Discover's security procedures are unreasonable pursuant to UCC § 11202(c).

**C.–UCL Claim**

Jung also alleges that Discover's conduct violates both the unlawful prong and the unfair prong of the UCL. See FAC ¶¶ 66–75.[3] He alleges that it violates the unlawful prong because it violates the EFTA and the UCC. Id. ¶ 73. He alleges that it violates the unfair prong because Discover's conduct in not refunding the unauthorized transfers caused a substantial injury, that it benefits Discover and does not

2026 WL 657719

benefit consumers at all, and that consumers could not have avoided the injury. Id. ¶¶ 67–70. Discover argues that Jung fails to state a claim because (1) the UCC preempts the UCL, (2) Jung's failure to state a claim under the EFTA or UCC means that he cannot state an "unlawful" claim under the UCL either, (3) Jung fails to satisfy the three-pronged FTC "unfair" test it evokes, and (4) Jung is not entitled to equitable relief. MTD at 13–15.

The Court need only reach this last argument. The UCL provides for equitable remedies. Guzman v. Polaris Indus., Inc., 49 F.4th 1308, 1313 (9th Cir. 2022). "[T]o entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." Id. Jung has not pleaded that he has no adequate legal remedy. See, e.g., FAC ¶ 75 ("Defendant's conduct caused and continues to cause economic harm").

Jung argues that he should be able to seek equitable relief in the alternative. See Opp'n at 14 n.16. "Although [Jung] can pursue equitable claims in the alternative to legal remedies, [he is] still required to explain how, or plead that, the legal remedies are inadequate." See McKinney v. Corsair Gaming, Inc., No. 22-cv-312-CRB, 2022 WL 2820097, at *10 (N.D. Cal. July 19, 2022). He has not done so.[4] The Court therefore DISMISSES the UCL claim, with leave to amend if Jung can add allegations about why he has no adequate legal remedy. Jung should also consider Discover's other arguments for dismissal.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES the EFTA claim without leave to amend, and DISMISSES the UCC and UCL claims with leave to amend. Jung shall amend the complaint, if he wishes to do so, **within 30 days of this order**. Failure to amend in a timely manner could result in dismissal with prejudice.

## IT IS SO ORDERED.

## All Citations

--- F.Supp.3d ----, 2026 WL 657719

## Footnotes

1    Moreover, the Court is persuaded that if the EFTA already covered wire transfers, there would have been no reason for Congress in 2010 to expand the EFTA to cover remittance wire transfers. See MTD at 5–6.

2    Moreover, though he discussed the reasonable-commercial-security-procedure prong more than the authorization prong, Judge Gilliam recently held in Little Seeds Children's Center, Inc. v. Citibank, N.A., No. 25-cv-1517-HSG, ––– F.Supp.3d ––––, ––––, ––––, 2025 WL 3141496, at *1, *8 (N.D. Cal. Nov. 10, 2025), that where plaintiffs were tricked by a fraudster into "us[ing] the security key to trigger completion of [fraudulent] wire transfers," they had plausibly pleaded that the transfers were unauthorized.

3    Although Jung initially pleaded a violation of the "fraudulent" prong of the UCL, see id. ¶ 76–79, he withdrew that claim, see Opp'n (dkt. 29) at 13 n.15.

4    Discover argues that he might be unable to do so. See MTD at 15 (arguing that requests for injunctive relief and restitution seek the same relief as claims to refund and reimburse).

**End of Document**                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.